**Walter McGILL, Appellant–Respondent,**

v.

**Jayne Franklin McGILL, Appellee–Petitioner.**

No. 47A04–0307–CV–342.

Court of Appeals of Indiana.

Jan. 22, 2004.

Thomas M. Frohman, Jamie L. Andres, Indiana Legal Services, Bloomington, IN, Attorneys for Appellant.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Walter McGill (Walter) appeals the trial court's ruling on his Motion to Correct Error, modifying its previous Order of child support.

We reverse and remand with instructions.[1]

---

*ISSUE*

Walter raises one issue on appeal, which we restate as follows: whether the trial court abused its discretion by ordering Walter to pay child support at a level which denied him the means of self-support at a minimum subsistence level.

*FACTS AND PROCEDURAL HISTORY*

Walter and Jayne McGill (Jayne) were divorced on November 13, 1990. They had one child, K.G., who was born on August 28, 1988. The Lawrence County Superior Court adopted the parties' agreement which awarded custody of K.G. to Jayne and ordered Walter to pay $25 per week in child support. At that time, Walter's only income consisted of Supplemental Security Income (SSI). He paid his child support fairly regularly through 1997. In 2002, the Social Security Administration (SSA) determined Walter to be eligible for Social Security disability benefits (disability benefits). Walter's current benefits amount to a total of $572 per month, which consists of $276 per month in SSI and $296 per month in disability benefits.

On December 6, 2002, Jayne filed a Petition for Citation and Modification. Subsequently, on March 31, 2003, Walter filed his Petition to Lower Support Obligation. On April 28, 2003, the trial court held a hearing on all pending motions. The following day, April 29th, the trial court issued its Order, requiring Walter to pay child support in the amount of $20 per week, plus a weekly $5 towards the arrearage of $9,110. On May 7, 2003, Walter filed his Motion to Correct Error. Pursuant to Walter's Motion, the trial court, on May 30, 2003, issued its Order on the Motion to Correct Error, which lowered Walter's child support obligation to $15.57

per week, plus $5 per week towards the arrearage.

Walter now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review '

■ Our standard of reviewing child support awards is well settled. We begin with the understanding that support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines (the Guidelines). *See Nienaber v. Marriage of Nienaber*, 787 N.E.2d 450, 456 (Ind.Ct.App.2003). The Guidelines apportion the cost of supporting children between the parents according to their means. *See id.* This approach is based on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. *See Fields v. Fields*, 749 N.E.2d 100, 104 (Ind.Ct.App.2001), *trans. denied.* A calculation of child support under the Guidelines is presumed to be valid. *Id.* Therefore, we will not reverse a support order unless the determination is clearly against the logic and effect of the facts and circumstances. *Id.* When reviewing a child support order, we do not revisit weight and credibility issues but confine our review to the evidence while reasonable inferences favorable to the judgment are considered. *Id.*

■ Nevertheless, we note at the outset that Jayne has filed no appellee's brief in this case. Where the appellee fails to file a brief on appeal, we may in our discretion reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. *See Ward v. Ward*, 763 N.E.2d 480, 481 (Ind.Ct.App.2002). This rule was established for our protection so that we can be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Id.*

### II. Child Support Order

Walter contends that the trial court abused its discretion by ordering him to pay child support at a level that deprives him of the means of self-support at a minimum subsistence level. Specifically, although Walter agrees that he should pay child support, he maintains that the trial court's blind adherence to the Guidelines rather than a fair examination of the facts and circumstances of the case would result in losing his housing and going hungry.

■ It is well established that, even though the calculation of child support by application of the Guidelines yields a figure that becomes a rebuttable presumption, there is room for flexibility. Guidelines are not immutable, black letter law. *See* Child Supp. G. 1, commentary. An indiscriminate and totally inflexible application of the Guidelines can easily lead to harsh and unreasonable results. *See id.* Instead, an infinite number of situations may prompt a trial judge to deviate from the appropriate Guideline amount. *See id.* Furthermore, the Guidelines do not establish a minimum support obligation. Rather, the facts of each individual case must be examined and support set in such a manner that *the obligor is not denied a means of self-support at a subsistence level. See* Child Supp. G. 2, commentary (emphasis added).

■ Walter did not proffer and our research did not disclose any case law dealing with the specific situation of calculating child support where the sole income of a non-custodial obligor consists of a combination of SSI and disability benefits. Therefore, we shall resolve this issue by determining the nature and purpose of

each source of income. "SSI is a federal social welfare program designed to assure that the recipient's income is maintained at a level viewed by Congress as the minimum necessary for the subsistence of that individual." *Cox v. Cox*, 654 N.E.2d 275, 277 (Ind.Ct.App.1995). In order to obtain SSI, Walter had to prove that he was unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment." 20 C.F.R. § 416.905(a). Means-tested public assistance programs such as SSI are specifically excluded from a parent's income for the purpose of computing child support under Child Supp. G. 3(A)(1). *See* Child Supp. G. 3(A)(1). As a matter of law, SSI recipients lack the money or means to satisfy child support obligations. *See Cox*, 654 N.E.2d at 277.

██ Disability benefits, on the other hand, are not means-tested income; rather, disability benefits are awarded until the recipient recovers sufficiently from a disability, regardless of the recipient's income level. *See Forbes v. Forbes*, 610 N.E.2d 885, 888 (Ind.Ct.App.1993). To receive disability benefits, the recipient must show that inability to work is medical in nature. *See id.* Unlike SSI, disability benefits are included in the definition of "weekly gross income" for the purposes of determining a child support order under Child Supp. G. 3(A)(1) and Indiana courts have consistently held that disability benefits are the proper subject of child support orders. *See, e.g., Esteb v. Enright by State*, 563 N.E.2d 139, 142 n. 2 (Ind.Ct.App.1990).

██ With these principles in mind, we now turn to the case at hand. The undisputed evidence shows that Walter's total income amounts to $572 per month, consisting of $276 in SSI and $296 in disability

benefits monthly. As we have established, only the disability benefits may be taken into account for the purpose of child support calculations. Moreover, the record reflects that Walter has no control over his income. Walter's half-brother, Lonnie South (South), testified that he has been Walter's representative payee [2] for about eight years. As representative payee, South is responsible for Walter's needs and well-being.

Our review of the record shows that when Walter became eligible for disability benefits in 2002, he received a back award for approximately $5,000. At the time, Walter was living at the Hauck House. However, South testified that Hauck House was in the process of asking Walter to leave because too many older people were living there. Therefore, South used $500 of the back award as a down payment on a trailer with a total purchase price of $10,500. The record shows that the rest of the award was used to furnish the trailer. The monthly payments on the trailer amount to $185 towards the purchase price and $145 for lot rent. In addition to the trailer payment and lot rent, South testified to the following monthly expenses: a light bill of approximately $50, a gas bill of approximately $67, a phone bill of $8, insurance on the trailer for $25, and a monthly child support payment of $20. Thus, Walter's monthly expenses amount to $500. South stated that Walter uses the remaining $72 per month for food, toiletries, and other basic needs.

During the trial, Walter testified that he probably smokes three packs of cigarettes a week at about $1.80 a pack. He added that his weekly food bill amounts to approximately $40. Walter does not drink

---

2. A representative payee is appointed by the SSA to receive and use a recipient's SSI or disability benefits for the recipient's needs. Such an appointment is generally made when the disabled recipient cannot handle his own funds due to his mental capacity.

and does not own a vehicle. The record further reveals that, for enjoyment, Walter used to frequent Wal–Mart and drink all the coffee he could for $.50. He also used to go to the movies. However, South elaborated that Walter no longer goes out because he does not have the money.

Our review of the record leaves us with the firm conviction that a mistake has been made. An examination of Walter's monthly expenses establishes that he has very little flexibility. All of his expenses are absolutely essential, and even discounting the monthly $20 towards child support, Walter barely breaks even. Of course, we recognize that every parent has a moral obligation to support his children. *See Rose v. Rose*, 481 U.S. 619, 632, 636, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987). However, Walter is a disabled, non-custodial, and indisputably indigent parent, living on public assistance benefits directed at providing him with the minimum support necessary to live. By requiring these benefits, specifically designed to guarantee a minimum of subsistence for Walter, to be diverted for child support purposes would be tantamount to undercutting the minimum support guarantee that these programs intended.

A computation in accordance with the child support guidelines, as applied by the trial court, produces a suggested weekly support payment of $15, which amounts to $60 per month. This would leave Walter approximately $12 per month for food and other basic necessities. However, our supreme court has previously warned that trial courts must avoid the pitfall of blind adherence to the computation for support without giving careful consideration to the variables that require a flexible application of the guidelines in order to do justice. *See Kinsey v. Kinsey*, 640 N.E.2d 42, 43 (Ind.1994), Child Supp. G 1, commentary.

Here, the trial court's judgment is clearly against the logic and effect of the facts and circumstances. *See Fields*, 749 N.E.2d at 104. The order to pay a weekly $15.57 in support obligation, plus $5 towards the arrearage was issued without the appropriate concern for Walter's ability to pay, given that he receives minimal income sufficient only to meet his basic needs. Accordingly, instead of a rigid adherence to the Guidelines, the trial court's child support calculation should have been two-fold: initially, the calculation should be based solely on Walter's disability benefits, with a further investigation that the resulting obligation does not deprive Walter of self-support at a subsistence level. *See* Child Supp. G. 2, commentary. Clearly, the trial court's Order failed to examine Walter's ability to pay the ordered support. Therefore, we conclude that Walter made a prima facie showing of reversible error on the part of the trial court. *See Ward*, 763 N.E.2d at 481. Thus, we find that the trial court abused its discretion. *See Fields*, 749 N.E.2d at 104. Consequently, we reverse the trial court's Order and remand with instruction to set Walter's child support obligation at a level that will not deprive him of self-support at a subsistence level.

### CONCLUSION

Based on the foregoing, we find that the trial court abused its discretion by ordering Walter to pay child support at a level which denied him the means of self-support at a minimum subsistence level.

Reversed and remanded with instructions.

DARDEN, J., and BAILEY, J., concur.