

FILED
May 28 2024, 9:07 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



# IN THE
# Court of Appeals of Indiana

In the Matter of the Supervised Estate of Dale E. Ward, Deceased,

Estate of Anna F. Ward by Angela Mainstone, Special Administratrix,

*Appellant-Petitioner*

v.

Kristen Nicole Wireman, as Personal Representative of the Dale E. Ward Estate,

*Appellee-Respondent*

---

May 28, 2024

Court of Appeals Case No.
23A-EU-1623

Appeal from the Pulaski Circuit Court

The Honorable Mary C. Welker, Judge

Trial Court Cause No.
66C01-2205-EU-17

**Bradford, Judge.**

# Case Summary

[1] Dale and Anna Ward ("Husband" and "Wife," respectively) were married for approximately forty years and, over time, accumulated a large collection of railroad memorabilia, which they eventually housed in a museum building separate from their residence ("the Museum"). In 2008, Husband formed Monon Whistle Stop, Inc. ("the Corporation"), which held the Museum and a restaurant. After Wife died in 2020, an estate was opened ("Wife's Estate"). Husband died approximately two years later, and his estate was opened ("Husband's Estate").

[2] Wife's Estate filed a claim against Husband's Estate for a 50% share of the Corporation, which it contended had been transferred to Wife before her death ("Claim No. 2"). Husband's Estate disallowed Claim No. 2. After the parties had submitted a stipulation related to Claim No. 2 ("Stipulation No. 2"), the probate court denied it. Wife's Estate contends that the probate court erred in concluding that Wife's share of the Corporation had passed back to Husband upon her death by operation of statute. Husband's Estate contends that the probate court correctly (1) concluded that any transferred share of the Corporation had reverted back to Husband upon Wife's death by operation of

statute and, in the alternative, (2) found that no transfer had ever occurred. We affirm.

## Facts and Procedural History

[3] Husband and Wife were married for approximately forty years, and, during the course of the marriage, they acquired railroad memorabilia and, eventually, a building separate from the marital residence in which to display it, which became the Museum. On December 1, 2008, Husband formed the Corporation, which included the Museum and a restaurant. Husband is the only listed owner of the Corporation on its articles of incorporation, and the Corporation, of which Husband was also CEO, neither issued stock certificates, kept any corporate record book, published minutes of meetings of shareholders, nor issued any other corporate records. On April 9, 2020, Wife died, and Wife's Estate was opened the same day. On May 20, 2022, Husband died, and, six days later, Nikki Wireman, as personal representative, opened Husband's Estate and petitioned to probate Husband's will.

[4] On September 13, 2022, Wife's Estate filed Claim No. 2 against Husband's Estate for a share of the Corporation. On December 8, 2022, Wireman disallowed Claim No. 2 and requested that the matter be set for bench trial. On April 7, 2023, the parties filed Stipulation No. 2, which provides, in part, as follows:

> 7.    Jeffrey Milligan ("Milligan") […] provided tax services to [Husband] and [Wife] for many years.
> [….]

16.      In 2010[,] Milligan advised [Husband] he could make a mar[it]al gift of 50% of the ownership in the corporation to [Wife] without tax consequence. The reason this transfer of 50% of the ownership was reflected on the tax return was because [Husband] wanted to be able to show [Wife] that her name was on the business as an equal owner. The tax filing had no impact on how the business was managed or operated.

17.      [Husband] then directed Milligan, in preparing the tax returns for the corporation, that its ownership should thereafter be reflected as 50% by [Husband] and 50% by [Wife].

18.      As a result, because it was a Sub-S Corporation, Milligan created individual K1's for each owner reflecting equal ownership until the date of death of [Wife].

Appellant's App. Vol. II pp. 24, 26.

[5] On May 15, 2023, the probate court held a hearing. While counsel for Wife's Estate argued that K-1 tax forms Wife had received before her death established that she had owned a 50% share of the Corporation, no K-1 forms were entered into evidence. On June 14, 2023, the probate court entered its final judgment denying Claim No. 2, in which it concluded that, even if Wife had owned a share of the Corporation, it had passed back to Husband upon her death by operation of statute. This was based on the probate court's determination that the railroad memorabilia that were displayed at the Museum and restaurant qualified as "household goods" pursuant to Indiana Code section 32-17-11-29(c)(1). Appellant's App. Vol II p. 18.

## Discussion and Decision

[6] Where the probate court issues findings of fact without a written request from either party under Indiana Trial Rule 52, the specific findings control only the

issues those specific findings cover. *In re Marriage of Duckworth*, 989 N.E.2d 352, 353 (Ind. Ct. App. 2013). Where there are no specific findings, a general-judgment standard applies, and we may affirm on any legal theory supported by the evidence adduced at trial. *Id.* Moreover, "a trial court judgment may be affirmed if sustainable on any basis in the record, even though not on a theory used by the trial court." *Benham v. State*, 637 N.E.2d 133, 138 (Ind. 1994). We consider only the evidence most favorable to the judgment and all reasonable inferences flowing therefrom and will neither reweigh the evidence nor judge the credibility of witnesses. *In re Marriage of Duckworth*, 989 N.E.2d at 354.

[7] Husband's Estate contends, *inter alia*, that the probate court did not err in finding that Husband had never transferred a share of the Corporation to Wife, which, if true, would sustain the probate court's judgment in favor of Husband's Estate. The probate court, however, did not actually make such a finding, stating that "[t]he Corporation was owned by [Wife] and [Husband] in an undivided 50% each; or because there was no writing beyond the Tax Schedules, the Corporation was owned by [Husband] individually." Appellant's App. Vol. II p. 18. Essentially, the probate court made no finding at all on this question. Pursuant to the general-judgment standard, however, we will nevertheless affirm the judgment if the record supports such a finding, even though the probate court did not actually make it. *See Benham*, 637 N.E.2d at 138. We conclude that the record does support such a finding.

[8] As an initial matter, the parties do not agree on an accurate characterization of Stipulation No. 2, with Husband's Estate arguing that the parties stipulated *only*

to how certain witnesses would have testified, while Wife's Estate argues that the parties did, in fact, stipulate to the facts contained in the anticipated testimony. We need not address this argument, however, because, even if the facts contained in the stipulated testimony are taken as true, they support a finding that Husband never transferred any of the Corporation to Wife.

[9] First, none of the anticipated testimony in Stipulation No. 2 contains a definitive statement from any witness that Husband ever transferred any part of the Corporation to Wife. Wife's Estate points to portions of Stipulation No. 2 indicating that (1) Milligan had advised Husband in 2010 that he could transfer 50% of the Corporation to Wife without tax consequence, (2) the transfer was "reflected" on tax returns, and (3) Husband had told Milligan that the Corporation's tax returns should reflect that the Corporation was owned 50/50 by Husband and Wife. Appellant's App. Vol. II p. 26. While this circumstantial evidence *might* be sufficient to support a finding that a transfer occurred, it certainly does not *compel* such a finding.

[10] Moreover, Indiana Code sections 23-1-26-6(b) and 23-1-26-7(b) provide, in part, that "[w]ithin a reasonable time after the issue or transfer of shares without certificates, the corporation *shall* send the shareholder a written statement" including, at a minimum, "(1) the name of the issuing corporation […]; (2) the name of the person to whom issued; and (3) the number and class of shares[,]" (emphasis added), and the record contains no evidence that any such written statement was ever sent to Wife. Wife's Estate argues that the statutorily-required information "is the same information set out in the K1 issued as part

of the Corporation[']s tax returns" and claims that several such forms were issued to Wife before her death. Appellant's Br. p. 18. Even if we were to assume that a K-1 could satisfy the statutory requirements for transfer, no such forms were produced below, and the only definitive statement that any K-1 was ever issued to Wife is contained in the arguments of counsel below, which are not evidence.

[11] In the absence of any definitive testimonial or documentary evidence that Husband ever transferred any portion of the Corporation to Wife, the record supports a finding that such a transfer never occurred. Consequently, we need not decide whether that share reverted back to Husband upon Wife's death.[1] Even though we dispose of the case on a ground different than that cited by the probate court, we conclude that the record supports its entry of judgment in favor of Husband's Estate. *See Benham*, 637 N.E.2d at 138.

[12] We affirm the judgment of the probate court.

Altice, C.J., and Felix, J., concur.

ATTORNEYS FOR APPELLANT

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

Michael E. Brown
Kightlinger & Gray, LLP
Indianapolis, Indiana

---

[1] Husband's Estate argues that whatever interest Wife had in the Corporation reverted to Husband upon her death by operation of Indiana Code subsections 32-17-11-29(c)(1) (because it consisted of "household goods") and/or -29(c)(2)(D) (because it was evidenced by a "written or printed instrument").

ATTORNEY FOR APPELLEE

Matthew G. McGovern
Fishers, Indiana